IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CR-025  HEA |
| | ) |
| ALLEN LAYTON | ) |
| | ) |
| Defendant. | ) |

### ALLEN LAYTON'S SENTENCING MEMORANDUM

Mr. Layton, through counsel, hereby respectfully requests a downward variance based upon the 18 U.S.C. § 3553 (a) factors. In support, the defendant states the following:

1. **Drug or Alcohol Dependance:** As a child, Mr. Layton felt lonely and inadequate. He places no blame on his family; they supported and provided for him. But some of Mr. Layton's earliest memories include the persistent sense that he did not fit in. Mr. Layton's family was hard-working, hard-charging, and socially active. His father owned a tractor-trailer supply company. His mother worked as a bartender, and his step-father was a respected police captain. His family demanded a strong work ethic. They loved sports, and they encouraged Mr. Layton and his brother to work hard and to play hard.

    a. Mr. Layton's brother was outgoing. He excelled in athletics and school, and he maintained a large group of friends.

1

In contrast, Mr. Layton was a sensitive child. He was shy, and he began to recognize that he did not enjoy sports or large social events like the rest of his family. Instead, he enjoyed more solitary pursuits like video games, auto mechanics, and watching movies. Feelings of inadequacy crept in at an early age. Mr. Layton struggled to find supportive friends, and he felt as though he could not live up to expectations.

b. In his despair, Mr. Layton began abusing substances when he was very young. He smoked marijuana when he was 9. He began drinking alcohol when he was 10, and he began using heroin when he was 14. He struggled with addiction for the next two decades. His criminal record reflects a consistent pattern during these years: Mr. Layton would begin working a low paying job. He would struggle financially, fall into heavy drug use, and then resort to petty crime and selling drugs to support his own use. This cycle always ended with involvement in the criminal justice system, first with probation, and eventually prison. Mr. Layton began to think he would spend the rest of his life in prison because there was simply no hope.

c. But in 2017, this attitude changed. While imprisoned in the Booneville Correctional Center, Mr. Layton began an apprenticeship program offered through the U.S. Department of Labor called Puppies for Parole. Mr. Layton was selected to receive certification to train and socialize young rescue dogs. This program had a profound effect on Mr. Layton. It taught him that his sensitivity was a virtue, instead of a liability.

2

    It taught him that patience and consistency of habit can change behaviors, and it taught him a new way to overcome feelings of depression and loneliness, without resorting to drugs.

d. When he was released in 2019, Mr. Layton's family noticed that he was in better spirits than ever before. Mr. Layton remained positive and resolved to remain sober. He began working at his father's company, and he repaired his prior romantic relationship. However, Mr. Layton began to again fall into financial trouble. Feelings of futility overtook him, and instead of putting his treatment concepts into practice, he began to isolate and eventually began using drugs. In a matter of months, he was arrested for the instant offense.

e. Now with the benefit of sobriety and reflection, Mr. Layton recognizes that job training will be crucial to his success and sobriety. Financial instability and feelings of inadequacy have been the primary triggers for his addiction. Consequently, he is focused on completing professional training, both while imprisoned and upon returning to the community. He respectfully requests a recommendation from the Court for placement in Electrical Vocational Training or the Electrical and Electronics Installer or Repairer Apprenticeship Program while housed in the Bureau of Prisons.

f. Mr. Layton also plans to pursue volunteer and employment opportunities working with rescue dogs; these animals deeply and positively changed his life.

2. **Remorse:** Mr. Layton is sincerely contrite about his behavior. As soon as he was arrested, he realized the harm he caused himself and his family. He felt intense remorse, and he admitted to the arresting officers that he was using and selling drugs. He has since expressed his desire to resolve the case quickly by taking responsibility for his actions.

3. **COVID-19 & Pandemic Restrictions:** Mr. Layton has been incarcerated in the Warren County Jail since January 4, 2021. At that time, the COVID-19 pandemic caused unprecedented restrictions on visitation which greatly interfered with Mr. Layton's ability to consult with undersigned counsel. This caused several months of delay as Mr. Layton reviewed his discovery and considered his options to the best of his ability, without the usual level of access to counsel. By the summer of 2021, regular contact with defendants became more feasible, and Mr. Layton was able to confer with counsel in person. A disposition was then promptly negotiated, and this case was set for combined plea and sentencing. However, undersigned counsel estimates the COVID-19 pandemic likely contributed to 6 -8 months of delay that would not have otherwise occurred

4. **18 U.S.C. § 3585:** This delay – which was entirely out of Mr. Layton's control – is material to the sentencing decision in this case because of 18 U.S.C. § 3585's instructions about how to calculate credit for the 11 months that Mr. Layton has already served in jail awaiting disposition.

4

a.  The statute requires that, "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . *that has not been credited against another sentence."* 18 U.S.C. § 3585 (b) (emphasis added). Because the past 11 months that Mr. Layton has spent in jail will be credited toward his Missouri parole case (1611-CR06240-01), the Bureau of Prisons will not give Mr. Layton credit for this time toward his federal sentence. Indeed, unless this Court orders that the sentence shall commence on the date it is pronounced and shall run concurrently to the parole case, Mr. Layton will likely not receive credit for any of the time he spends in jail until he is paroled to his federal sentence. Absent the COVID-19 pandemic, Mr. Layton would have resolved his federal case much earlier, and he would have already been transferred to the Missouri Department of Corrections and paroled to his federal sentence. Undersigned counsel concedes that this is conjecture, but it is the normal, expected procedure that would have been followed and has been followed in similar cases in this District, in undersigned counsel's experience.

5. **Unwarranted Sentencing Disparity:** Consequently, in addition to the factors listed in paragraphs 1 and 2, Mr. Layton respectfully requests a downward variance to avoid an unwarranted sentencing disparity among similarly-situated defendants whose circumstances differ only by virtue of the COVID-19 pandemic.

6. As to Count 1, the defense requests a 40 month downward variance below the bottom of the United States Sentencing Guideline Range (i.e. 100 – 125 months). This would result in a sentence of **60 months** imprisonment. The defense respectfully avers that such a sentence is sufficient, but not greater than necessary to meet the aims of punishment outlined in 18 U.S.C. § 3553(a)(2).

WHEREFORE, Mr. Layton respectfully requests a sentence of 60 months imprisonment. Mr. Layton further requests this honorable Court's order stating that said sentence shall commence on the date it is pronounced and that it shall run *concurrently* with the defendant's parole revocation case (1611-CR06240-0).

Respectfully submitted,

/s/Charles J. Banks
CHARLES J. BANKS, #60027MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Charles_Banks@fd.org

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Shane Blank, Assistant United States Attorney.

                                                  <u>/s/Charles J. Banks</u>
                                                  CHARLES J. BANKS, #60027MO
                                                  Assistant Federal Public Defender



*Allen & Ernie*



*Allen & Missy*



*Allen & Reuben*



*Allen and his Family, Before his Brother's Wedding.*